1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

**\* \* \***

10

CONNIE KWOK,                                    Case No.: 2:09-cv-2298-RLH-LRL

11

           Plaintiff,                          **O R D E R**

12

   vs.

13

RECONTRUST COMPANY, N.A.; BANK OF
AMERICA; BAC HOME LOANS

14

SERVICING, LP; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,

15

INC.,

16

         Defendants.

17

18

19

      JEFFREY D. CONWAY, having failed to appear or otherwise respond in writing

20

by October 14, 2010, or in person on November 16, 2010, at 10:00 AM as ORDERED to SHOW

21

CAUSE why this Court should not impose sanctions, is hereby SANCTIONED as follows:

22

**BACKGROUND**

23

      This dispute arises from Kwok's allegations that her mortgage lenders committed

24

illegal acts and were attempting to wrongfully foreclose upon her property located at 8466 Willow

25

Mist Drive in Las Vegas, Nevada.  (Dkt. #1, Pet. for Removal Ex. A., Compl.)  Kwok originally

26

purchased the property in 1997.  Sometime thereafter, Kwok refinanced her mortgage loan with

AO 72
(Rev. 8/82)

1    Countrywide Home Loans, which is now Bank of America.  After Kwok defaulted on her

2    mortgage loan in February 2009, Defendants instituted foreclosure proceedings on the property.

3    Recontrust filed a Notice of Default in June 2009 and a Notice of Trustee Sale in Oct. 2009.

4    Recontrust filed a second Notice of Trustee Sale several months later, however, Defendants did

5    not immediately conduct a sale of Kwok's property.

6                    On October 21, 2009, Kwok filed suit in the Eighth Judicial District Court of the

7    State of Nevada alleging eleven causes of action.  In December 2009, Defendants removed the

8    lawsuit to this Court and filed a Motion to Dismiss (#7).  However, the United States Judicial

9    Panel on Multi-District Litigation consolidated this and numerous other cases wherein the

10   plaintiffs allege that Defendant Mortgage Electronic Registration Systems ("MERS") engaged in

11   improper business practices when processing home loans.  *In re: MERS Litigation*, MDL No. 09-

12   2119-JAT ("MERS MDL").  The Panel further indicated that the MERS MDL would separate and

13   remand any unrelated claims back to the original district court.  (Dkt. #24, Conditional Transfer

14   Order, Feb. 16, 2010.)  In the interim, this Court stayed all proceedings.  (Dkt. #26, Order, Mar. 1,

15   2010.)

16                   In June 2010, the MERS MDL expressly remanded Kwok's claim for tortious

17   breach of the implied duty of good faith and fair dealing ("claim 4").  (Dkt. #30, MDL Order

18   (stating that claims 1–3 and 5–9 remain in the MERS MDL while remanding claim 4 and claims

19   10–11 for declaratory relief and injunctive relief to the extent they applied to claim 4.)  The Court

20   then evaluated Defendants' motion to dismiss with regard to the remanded claim four and granted

21   the motion.  (Dkt. #33, Order, June 23, 2010.)  At this point in the litigation, Kwok's only

22   operative claims remain in the MERS MDL.

23                   On September 28, 2010, Kwok's counsel, Jeffrey D. Conway, filed an emergency

24   *ex parte* Motion for Temporary Restraining Order ("TRO Motion") (#37) in an attempt to prevent

25   a trustee sale scheduled for that same day.  Conway's TRO Motion did not meet the standards set

26   forth in Rule 7-5 of the Local Rules of Practice or Rule 65 of the Federal Rules of Civil Procedure

2

1   for *ex parte* relief, much less the Ninth Circuit's four-part test for injunctive relief.  *See Stormans,*

2   *Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council,*

3   *Inc.*, 129 S. Ct. 365, 374 (2008)).  Furthermore, Conway relied on a baseless argument to support

4   the TRO Motion—an argument which the Court previously informed Conway was contrary to

5   Nevada law.  *Ritter v. Countrywide Home Loans, Inc.*, No. 2:10-cv-00634-RLH-RJJ (Dkt. #20,

6   Order, Sept. 24, 2010).

7           The Court denied Conway's TRO Motion, directed the Clerk of the Court to unseal

8   the improper *ex parte* filing, and ordered Conway to show cause as to why the Court should not

9   impose sanctions.  (Dkt. #38, "Order to Show Cause", Sept. 30, 2010.)  The Order to Show Cause

10   gave Conway until 4:00 PM on October 14, 2010, to show cause in writing as to why sanctions

11   should not be imposed for the conduct described within the Court's Order, but he failed to do so.

12   The Court then gave Conway notice to appear in person on November 16, 2010 at 10:00 AM to

13   show cause.  (Dkt. #39, Notice of Hr'g, Nov. 5, 2010.)  However, Conway failed to appear in

14   person for the hearing.  (Dkt. #40, Hr'g Mins., Nov. 16, 2010.)  For the reasons discussed below

15   and in the Order to Show Cause, the Court imposes sanctions upon Conway.

16                      **DISCUSSION**

17   **I.**    **Sanctions**

18           The Court draws its authority to impose sanctions from several sources.  Even if no

19   motion for sanctions is made, Rule 11(c)(3) of the Federal Rules of Civil Procedure empowers the

20   court to impose sanctions *sua sponte*.  However, the court may only do so after: (1) entering an

21   order describing the specific conduct that allegedly violates Rule 11; and (2) directing the

22   offending party to show cause why it has not violated the rule.  Fed. R. Civ. P. 11(c).  Under Rule

23   IA 4-1 of the Local Rules of Practice, the court may, after notice and opportunity to be heard,

24   "impose any and all appropriate sanctions on an attorney" who fails to comply with these rules or

25   fails to comply with any order of the court without just cause.  In addition, the Court has inherent

26   power apart from any rule or statute to impose certain sanctions for "bad faith conduct" in

AO 72
(Rev. 8/82)

1    litigation or "wilful disobedience" of a court order.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752,

2    764–66 (1980); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (finding that district

3    courts have power to discipline members of the bar who willfully disobey a court order).

4            Failure to comply with the Local Rules of Practice, Federal Rules of Civil

5    Procedure, or a court order may result in sanctions, up to and including case-dispositive sanctions.

6    *See* Fed. R. Civ. P. 41(b).  District judges have an arsenal of sanctions they can impose, including

7    both monetary and nonmonetary sanctions such as: striking the offending paper; issuing an

8    admonition, reprimand, or censure to counsel; requiring participation in CLE courses, seminars, or

9    other educational programs; referring the matter to disciplinary authorities, and disqualifying

10   counsel.  *See Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).  A district court's

11   choice of deterrent is appropriate when it is "the *minimum* that will serve to *adequately* deter the

12   undesirable behavior."  *Doering v. Union Cnty. Bd. of Close Freeholders*, 857 F.2d 191, 194 (3rd

13   Cir. 1988) (emphasis in original); *see also Molski v. Evergreen Dynasty Corp*, 500 F.3d 1047,

14   1063 (9th Cir. 2007).  Where the attorney's personal responsibility is apparent to the court, it may

15   specifically order the attorney to pay the sanction personally and *not* seek reimbursement from the

16   client.  *Derechin v. State Univ. of New York*, 963 F.2d 513, 518 (2nd Cir. 1992).

17   **A.    Conway's Failure to Comply with Requirements for *Ex Parte* Motions**

18           The Order to Show Cause informed Conway that his TRO Motion did not meet

19   Local Rule 7-5's and Rule 65's requirements for *ex parte* injunctive relief.  The TRO Motion

20   stated, "Plaintiff has given notice of this Motion to Recontrust Company N.A., purported trustee,

21   and acted diligently in this matter."  (Dkt. #37, Mot. ¶ 17.)  The Court found that this conclusory

22   statement did not satisfy Local Rule 7-5(a)'s requirement for a statement "*showing good cause*

23   *why* the matter was submitted to the court without notice to *all parties*" because it fails to state the

24   reason for the *ex parte* filing or list each Defendant.  (emphasis added.)  The Court could not infer

25   good cause or notice to all parties from this statement.  Conway also failed to show any efforts to

26   obtain a stipulation pursuant to Local Rule 7-5(b) by stating Plaintiff had acted diligently.  The

1   TRO Motion did not meet the rules' requirements in order for Kwok to receive *ex parte* injunctive

2   relief or submit the motion under seal.

3           Furthermore, the Order to Show cause stated that Conway filed spurious and

4   unfounded motions in several other cases before this Court.  Each case is a mortgage foreclosure

5   case where Conway has filed nearly identical *ex parte* TRO motions.  (Dkt. #38, Order to Show

6   Cause 6 n.2 (collecting cases).)  Not one of these motions complied with Rule 65(b) or Local Rule

7   7-5 for *ex parte* filings.  Furthermore, in three of these cases, Conway filed a second motion with

8   the same defects.  *Elgrichi*, 2:10-cv-00673-LDG-PAL (Dkt. #5, June 8, 2010; Dkt. #7, Aug. 31,

9   2010); *Ritter*, 2:10-cv-00634-RLH-RJJ (Dkt. #5, June 3, 2010; Dkt. #19, Sept. 21, 2010); *Shelly*,

10  2:10-cv-00518-RLH-PAL (Dkt. #6, July 27, 2010; Dkt. #14, Aug. 25, 2010).  In fact, the Court

11  doubts that Conway ever read its order denying his second TRO motion in *Ritter* (2:10-cv-00634-

12  RLH-RJJ, Dkt. #20, Sept. 24, 2010) because the TRO Motion repeated the same erroneous

13  arguments verbatim.

14

15      **B.      Conway's Repeated Use of Unfounded Arguments and Failure to
                   Acknowledge Prior Adverse Rulings**

16          The constant repetition of rejected arguments hinders a court's management of

17  pending cases because it keeps the case in a stagnant posture and prevents the case from

18  progressing in a logical fashion.  *U.S. Commodity Futures Trading Comm'n v. Lake Shore Asset*

19  *Mgmt. Ltd*., 540 F.Supp.2d 994, 1015 (N.D. Ill. 2008) (citing *In re Mann*, 311 F.3d 788, 789 (7th

20  Cir. 2002) ("Half of all litigants (the losing half) may believe that the decision is incorrect, but it is

21  essential to the operation of any legal system that unsuccessful litigants abide by the judgment

22  unless they can persuade a higher court to set it aside.")).  An attorney displays sanctionable bad

23  faith when he knowingly or recklessly raises a frivolous argument.  *Mendez v. County of San*

24  *Bernardino*, 540 F.3d 1109, 1131–32 (9th Cir. 2008).  Thus, attorneys who intentionally or

25  /

26

AO 72
(Rev. 8/82)

1   recklessly disregard basic procedural rules—such as repeating rejected arguments and failing to

2   acknowledge prior adverse rulings—do so at their own peril.  *See Id.*

3        In the Order to Show Cause, the Court informed Conway that his TRO Motion

4   repeated an argument which the Court had previously deemed unfounded and contrary to Nevada

5   case law.  Conway has argued in several cases before this Court that, in cases where a plaintiff

6   challenges a non-judicial foreclosure action or mortgage obligation, Nevada law requires a

7   defendant to show that it is "the current holder of the note or the nominee of the current holder of

8   the note." (*See, e.g.*, Dkt. #37, TRO Mot. ¶ 8.)  He bases this erroneous argument on an invalid

9   interpretation of the holding in *Mortgage Electronic Registration Systems, Inc. v. Chong*, No.

10   2:09-cv-00661-KJD-LRL, 2009 WL 6524286 (D. Nev. Dec. 4, 2009), wherein the court

11   distinguished between standing to lift an automatic stay in a bankruptcy proceeding and statutory

12   authority to commence nonjudicial foreclosure proceedings.  The Court explained to Conway in

13   the Order to Show Cause that his reading of *Chong* was incorrect.  To the contrary, the case law

14   within this district holds that the Nevada law governing nonjudicial foreclosure, NRS § 107.080,

15   does not require a lender to produce the original note or prove its status as a real party in interest,

16   holder in due course, current holder of the note, nominee of the current holder of the note, or any

17   other synonymous status as a prerequisite to nonjudicial foreclosure proceedings.  *See, e.g.*,

18   *Weingartner v. Chase Home Finance, LLC*, 702 F.Supp.2d 1276, 1280 (D. Nev. 2010).

19        The Court ordered Conway to show cause as to why he should not be sanctioned for

20   his repeated use of this unfounded argument and failure to acknowledge prior adverse rulings,

21   however, Conway chose not to do so.  In fact, Conway chose to employ this argument *again* after

22   the Court issued the Order to Show Cause in this case and an order denying his second TRO

23   motion in *Ritter*, No. 2:10-cv-00634-RLH-RJJ (Dkt. #20, Order denying TRO Mot. (#19), Sept.

24   24, 2010; Dkt. #22, Mot. Prelim. Inj., Oct. 21, 2010).  Both orders were sufficient to place Conway

25   on notice that he had misinterpreted *Chong* and could no longer proffer the incorrect argument in

26   good faith.  Even if Conway repeated the previously rejected arguments to preserve the record for

AO 72
(Rev. 8/82)

appeal, he has not come forth to explain his pattern of behavior or clarify his intent.  The Court is not a mind-reader and must therefore conclude that counsel intends to be disrespectful and defiant.

### D.   Failure to Show Cause in Writing and in Person

A party willfully disobeys a court order if it fails to take all reasonable steps within its power to insure compliance with the order.  *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146–47 (9th Cir. 1983).  If a party disobeys a specific and definite court order, a court may adjudge the party in contempt regardless of the party's intent in disobeying the order.  *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987).

To date, Mr. Conway has failed to respond in any fashion to the Court's Order to Show Cause.  However, he did respond to Magistrate Judge Leen's order to show cause in another action wherein he failed to submit a certificate of interested parties in a timely fashion.  *Saniel v. MERS, Inc.*, No. 2:10-cv-01497-RHL-PAL (Dkt. #9, Response, Oct. 20, 2010.)  His failure to take any steps to insure compliance—either in person or in writing—show a complete disregard for the Court's specific and definite orders.  The Court therefore finds that Mr. Conway has wilfully disobeyed its Order to Show Cause.

Conway's willful submission of spurious motions and failure to comply with the Federal Rules of Civil Procedure, Local Rules, and the Court's orders constitute abusive litigation practices that have interfered with the Court's ability to hear this case, disrupted the Court's timely management of its docket, delayed litigation, wasted judicial resources, and threatened the integrity of the Court's orders and the orderly administration of justice.  The Court therefore finds that Conway has taken actions in bad faith and with willful disobedience of the Court's order and sanctions are warranted.

/

/

/

/

AO 72
(Rev. 8/82)

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Mr. Conway shall:

- Remit a monetary sanction in the amount of $3,000.00 to the Clerk of the Court no later than December 15, 2010;

- Refrain from seeking reimbursement or any other type of compensation from his client, Plaintiff Connie Kwok, with regard to these sanctions or the Order to Show Cause (#38);

- Refrain from filing any pleading or motion to the Court wherein he argues that Nevada law requires a defendant to produce the original note or prove its status as a real party in interest, holder in due course, current holder of the note, nominee of the current holder of the note, or any other synonymous status as a prerequisite to nonjudicial foreclosure proceedings;

- Comply with Rule 7-5 of the Local Rules of Practice and Rule 65 the Federal Rules of Civil Procedure for *ex parte* TRO motions;

- Submit a copy of this Court's Order imposing sanctions to all his clients who have or will challenge foreclosures, no later than December 15, 2010, and then certify to the Court that he has complied no later than December 20, 2010.

Failure to comply with this Order may prompt the Court to impose additional sanctions—including referral to the State Bar of Nevada for disciplinary proceedings. Furthermore, because all remaining claims are now pending adjudication by the MERS MDL, the Clerk of the Court is directed to close this case.

Dated: November 19, 2010.

**ROGER L. HUNT**
**Chief United States District Judge**

8